UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ARMAMENT SYSTEMS AND
PROCEDURES INC.,

      Plaintiff,

  v.                              Case No. 00-C-1257

IQ HONG KONG LIMITED, et al.,

      Defendants.

## ORDER

Before me presently are two motions to compel: one filed by plaintiff Armament Systems and Procedures (ASP) and another filed by defendant Emissive Energy. In the first-filed of the two motions, ASP seeks an order compelling production of answers to interrogatories as well as documents it believes Emissive possesses relating to its liability for infringement. Emissive claims that most of the requests are either over broad or are more relevant to damages than liability, in which event the bifurcation order entered in this case would render production premature.

As with many discovery disputes, misunderstandings are at the forefront. A central objection of Emissive is ASP's request for identification and other information about "each LED light manufactured, designed," etc., by Emissive. It claims ASP knows full well that Emissive produces "dozens of" LED lights, most of which are not at all relevant to the infringement claim here, and that the request for information about "*each* LED light manufactured" is therefore overly broad and burdensome. ASP counters that in its discovery requests it has defined "LED light" narrowly to mean only "any hand held LED miniature flashlight." This seems a reasonable

restriction and solves Emissive's claims of over breadth; thus Emissive's complaint that the request is a fishing expedition for irrelevant information is misplaced. The same is true for Emissive's argument that ASP should be limited to discovery only about the one particular infringing device identified in its amended complaint. In a notice pleading system, plaintiffs need not pinpoint the exact legal theory of their case and bind themselves to that theory for all eternity; if a plaintiff identifies, say, Model No. 10001 as an infringing device, it should also be entitled to discovery about similar models, such as No. 10001A or 10002. Here, the request is for information only about hand held miniature lights, which is a narrow subcategory of such devices. Given that limitation, the discovery sought is not out of bounds.

As to Emissive's claim that some of the requests are related to damages, which would violate the bifurcation order, it is certainly true that sales figures and other information sought by ASP could impact the amount of recovery. But it is also true, as ASP notes, that sales of a product can be evidence of obviousness, which is a defense raised in this case. Emissive admits that, but argues that it only raised the defense of obviousness in its answer so as not to waive it; if obviousness should actually emerge as a defense with some teeth, ASP would at that point have the ability to discover the information it seeks now. But that sort of if-then approach is not how discovery is generally conducted. Moreover, Rule 11 requires legal statements in pleadings to be "warranted by existing law" and facts to be "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(2), (3). Raising a defense for the sole purpose of not waiving it can lead to confusion and waste, which is perhaps evidenced herein. And given the narrowed definition of "LED light" noted above, the request for sales and

2

other information sought in the interrogatories is a reasonable one. Accordingly, Emissive will be ordered to respond appropriately to interrogatories 13, 20 and 21, as well as production request 24.

Emissive also objects to the breadth of interrogatory 17, claiming that as written it would require disclosure not only of the source of its LED lights (which would go to liability) but also entities to whom Emissive has sold the lights. ASP has since clarified that such is not the case: it only wants information "regarding the source where Emissive *obtained* the [hand held LED miniature] lights Emissive is selling". With this gloss appended to the interrogatory, Emissive should be able to comply with the interrogatory (17) as well as production request 15.

Finally, it appears Emissive, in its brief, has amended its response to production request 19, which it claims will assuage ASP's fears and concerns. ASP has not pressed the point in its reply brief, and thus the issue now appears settled. Accordingly, ASP's motion to compel is granted to the extent set forth above.

Emissive also filed its own motion to compel, although most of the issues it raised seem to have now been settled. Its first complaint pertains to what it regards as ASP's vague response about the exact date the invention was conceived, but in its response brief ASP states that it is serving a supplemental response which will moot the objection. Similarly, ASP's brief seems to satisfy Emissive's concerns about whether ASP is still claiming infringement on claim 4 and its dependent claims (it is not). Finally, Emissive had requested CAD and "Pro/E" files regarding the development of the invention; ASP says none exist. ASP cannot be ordered to produce what it does not possess. Not all of the issues appear settled, however. In production request 12, Emissive sought "all documents concerning the contribution of Donald A. Keller to the invention claimed in the '018 patent, including, without limitation, memoranda, correspondence, and royalties or royalty

3

agreements for any such contribution." Request 13 seeks the same information regarding W. Clay Reeves. In response, ASP provided "heavily redacted" documents which in Emissive's view are impossible to read. Emissive also claims that ASP improperly set itself up as the arbiter of relevance because it refuses to provide royalty information on the grounds that such information is not relevant. It is unclear what the release of detailed information about royalties would bring to bear on the question of validity–Emissive simply claims the information is "relevant to Emissive's validity defenses," without explaining how that might be true. Conceivably, the timing of the royalties might be an issue, as royalty payments to inventors might provide clues as to the origins of the invention itself. To that limited extent, therefore, ASP is ordered to provide unredacted relevant sections of the pertinent employment agreements inasmuch as they shed any light on the timing of royalty payments. It may continue to redact information regarding the *amounts* of such payments, however. For the reasons given above, **IT IS ORDERED** that ASP's and Emissive's motions to compel are granted, in part, to the extent noted in this order.

Dated this 16th day of August, 2005.

s/ William C. Griesbach
William C. Griesbach
United States District Judge