UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ARMAMENT SYSTEMS AND
PROCEDURES, INC.,

        Plaintiff,

v.                                 Case No.    00-C-1257

IQ HONG KONG, LTD., et al.,

        Defendants.

**MEMORANDUM DECISION ON MOTION FOR BIFURCATED
TRIAL ON INEQUITABLE CONDUCT DEFENSE**

Ten of the defendants named in this consolidated action for patent infringement have moved for an immediate bench trial, pursuant to Fed. R. Civ. P. 42(b), on the affirmative defense and counterclaim that the plaintiff engaged in inequitable conduct before the Patent and Trademark Office ("PTO").[1] They argue that conducting a separate bench trial on a defense of inequitable conduct prior to trial of a claim of infringement is an accepted practice in patent cases and that, if utilized here, it would save significant time and expense for both the parties and the court. Plaintiff Armament Systems and Procedures, Inc. ("ASP"), strongly opposes defendants' request. ASP argues that conducting a separate bench trial on the defense of inequitable conduct would violate its Seventh Amendment right to a jury trial on the issues raised in its infringement action. ASP also

---

[1] Although the motion seeking an immediate trial on the claim of inequitable conduct is brought by ten of the defendants, it is not clear that all ten of these defendants have previously asserted inequitable conduct as an affirmative defense or counterclaim. The parties should review their pleadings and, if necessary, move for leave to amend so as to preserve the issue they have raised by motion.

disputes the defendants' contention that conducting a separate trial would save time and expense, and instead argues that it would be especially costly and extremely burdensome to the plaintiff.

I find that the defendants have the better of the argument and for the reasons set forth grant their motion.

**BACKGROUND**

Plaintiff Armament Systems and Procedures, Inc., (ASP) is the assignee of United States Patent No. 6,190,018 ("the '018 patent"), which discloses a miniature LED flashlight. Several months before the '018 patent was issued, ASP filed this action against IQ Hong Kong Limited, Zen Design Group Limited, and Sun Yu (hereinafter collectively "IQHK"), alleging violations of federal and state law governing unfair trade practices. On February 20, 2001, the very day the '018 patent was issued, ASP sought leave to amend its complaint, adding a claim for infringement of the '018 patent. This was the first of seven lawsuits that ASP filed against twenty-three separate manufacturers, distributors, and/or resellers of handheld miniature flashlights. Other defendants include Esrim VE-Sheva Holding Corporation; Gadget Universe; Coast Cutlery Company; JSA, Inc., d/b/a Excell Marketing, Inc.; Emissive Energy Corporation; Harriet Carter Gifts, Inc.; Bandwagon, Inc.; Vector Products, Inc., d/b/a Vector Manufacturing, Inc.; General Parts, Inc., d/b/a Carquest Auto Parts of West Allis, Wisconsin; Carquest Management Services, Inc.; Mills Fleet Farm, Inc.; Northland Fishing Tackle, Inc.; C. Crane Company, Inc.; Target Corporation; Radio Shack Corporation; and Team Products International, Inc. Following a lengthy stay of proceedings while the Patent and Trademark Office (PTO) reexamined the patent, the cases were consolidated pursuant to Fed. R. Civ. P. 42(a) as to all issues involving claim construction and patent validity.

The court issued claim construction decisions on January 5 and June 15, 2005. Since that time, discovery has continued, and ASP has settled its claims against several of the parties. However, ASP has also filed seven additional lawsuits (one of which has been voluntarily dismissed) alleging infringement on a series of patents that defendants claim are continuations or continuations in part of the '018 patent.

On November 1, 2006, defendants IQ Hong Kong Limited, Zen Design Group Limited, Sun Yu, Emissive Energy Corporation, Vector Products, Inc., Carquest Management Services, Inc., Mills Fleet Farm, Inc., Northland Fishing Tackle, Inc., Target Corporation, and Team Products International, Inc., filed a motion for a separate bench trial on the issue of inequitable conduct. In support of their motion, the defendants allege that they can prove by clear and convincing evidence that ASP engaged in inequitable conduct before the PTO in that Dr. Kevin Parsons, its chairman and CEO, had submitted a false declaration to the PTO during the reexamination of the patent-in-suit. Whichever way the issue is decided, defendants contend that an immediate bench trial on this issue would save significant time and expense for both the parties and the court. If the defendants prevail, they note, all of the '018 patent claims would be unenforceable and, thus, the entire patent issue in all of the cases would be resolved. Even if the court rules that Parsons did not engage in inequitable conduct, a bench trial would still result in significant savings for the parties and the court, they contend, because inequitable conduct would be litigated only once, instead of in as many as fourteen separate trials.

In their brief in support of their motion for an immediate bench trial on the issue, defendants expand on their charge that Parsons engaged in inequitable conduct during the reexamination process. They point out that during the reexamination proceedings before the PTO, the Examiner

3

rejected key claims of the '018 patent anticipated by U.S. Patent No. 5,893,631 issued to Padden (the "Padden Patent"). Because the Padden Patent was granted on an application filed on November 3, 1997, it was considered prior art to the '018 patent, the application for which was filed on January 6, 1999, unless the '018 patentees could establish that their invention date was earlier than November 3, 1997. In response to the action taken by the Examiner, Dr. Parsons filed a declaration in which he stated that the invention disclosed and claimed in the '018 patent was conceived prior to the November 3, 1997, filing date of the Padden Patent and that due diligence was exercised from prior to the Padden Patent filing date to the reduction to practice of the invention disclosed and claimed in the '018 patent. In support of his contention that his conceptualization of the invention preceded the date of the application for the Padden Patent, Dr. Parsons attached to his declaration as Exhibit 1 a copy of a handwritten drawing that he stated he prepared prior to November 3, 1997, which disclosed substantially all of the features of the miniature LED flashlight as disclosed and claimed in the '018 patent. Based upon Parsons' declaration and attached drawing, the PTO withdrew the rejection based on the Padden Patent, and all claims that were rejected based on Padden were allowed. It is the drawing attached to Parsons' declaration that the defendants primarily, but not exclusively, rely upon to support their claim of inequitable conduct.[2]

The moving defendants have presented evidence from two forensic document examiners who have examined Exhibit 1 to the Declaration submitted by Parsons in support of his claim that his conceptualization of the invention preceded the application for Padden and have concluded that the June 14, 1997, date cannot be relied on as accurate. Using an ElectroStatic Detection Apparatus

---

[2]Defendants' claim of inequitable conduct is also based upon allegations that ASP failed to disclose to the PTO relevant prior art. If this were the sole basis of their claim of inequitable conduct, a separate trial would not be warranted.

4

(ESDA), the document examiners found indented impressions of other documents on Exhibit 1. The ESDA operates on the principle that the act of writing on one page while that page is in contact with a second or third page causes the indented image of the writing to be imparted to the underlying pages. These are not only physical impressions, but reside in the electrostatic field generated by the paper. By analyzing the impressions, one can determine which documents were written on top of others and the sequence in which they were written.

In analyzing Exhibit 1, both of the defendants' forensic experts discovered impressions that postdate the date of the exhibit. Some of the impressions originated from portions of a knife drawing by Dr. Parsons bearing a date of February 20, 1999. A later examination revealed that a second document, dated May 2000, was also impressed into both the February 1999 and the June 1997 documents. Based on the alignment of the impressions, and the properties of the paper of all three drawings, the defendants' experts concluded that the February 1999 drawing was created while fixed in a pad of graph paper within a few sheets above Exhibit 1, and the May 2000 document, in turn, was created while fixed in the same pad within a few sheets of the February 1999 and Exhibit 1. In other words, assuming the drafter started at the first page of the pad, both the May 2000 and February 1999 drawings were created, and impressions thereof were left on the underlying page, before Parsons made the sketch of a miniature flashlight on that page that he later represented to the PTO as having been created before November 3, 1997. Given the dates of the earlier drawings, defendants contend it necessarily follows that Parsons' Declaration to the PTO was false and Exhibit 1 was a fabrication. And if that is true, they argue, the '018 patent and any related patent is unenforceable. *See Baxter International, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1332 (Fed. Cir. 1998) ("It is also settled law that inequitable conduct with respect to one claim renders the entire patent unenforceable.").

5

In response, ASP argues first that because the legal and equitable claims in the case involve common factual issues, granting defendants' request for an immediate bench trial would violate its Seventh Amendment right to a jury trial. ASP also argues that irrespective of its right to a jury trial under the Seventh Amendment, defendants' motion should be denied because a separate trial on inequitable conduct would result in judicial inefficiencies and the duplicative presentation of evidence and issues. Finally, ASP argues defendants' motion should be denied because the evidence of inequitable conduct is not clear and convincing and, thus, a separate trial would be a waste of time.

## ANALYSIS

**1. Seventh Amendment Right to a Jury Trial**

ASP first argues that the court's discretion to order a separate trial under Fed. R. Civ. P. 42(b) is constrained by the Rule's requirement of "always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution . . . ." The Seventh Amendment states:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

U.S. Const. Amend. VII. ASP notes that it has requested and is entitled under the Seventh Amendment to a jury trial on its infringement claims and on the defendants' defenses relating to patent validity because they are legal in nature. Although defendants' affirmative defense and counterclaim of inequitable conduct, as the name implies, are equitable claims to be decided by the court, ASP argues that the inequitable conduct defense in this case cannot be tried to the court

6

before a full jury trial on liability because doing so would deprive ASP of its constitutional right to a jury trial on the common inequitable conduct/validity issues. (ASP Br. at 2.)

ASP's argument is predicated on the Supreme Court's decision in *Beacon Theatres, Inc. v Westover*, 359 U.S. 500 (1959). In *Beacon Theatres*, the plaintiff Fox, after being accused by Beacon of antitrust violations, commenced an action against Beacon for declaratory relief. Beacon counterclaimed, alleging the antitrust violation it had previously accused Fox of committing. *Id.* at 502-03. Viewing the claim for declaratory relief as equitable, the district court ordered a trial to the court on that claim before a jury would be asked to determine Beacon's antitrust claim. Beacon sought a writ of mandamus to compel the district court to vacate its order on the ground that it violated its Seventh Amendment right to a jury trial. The Supreme Court agreed, holding that "if Beacon would have been entitled to a jury trial in a treble damage suit against Fox it cannot be deprived of that right merely because Fox took advantage of the availability of declaratory relief to sue Beacon first." *Id.* at 504. ASP argues that, just as in *Beacon Theatres*, holding a trial to the court on the defendants' defense of inequitable conduct would deprive it of its right to a jury trial on legal questions of infringement and validity.

ASP's argument that a prior trial to the court on a defense of inequitable conduct in a patent infringement case deprives it of its Seventh Amendment right to a jury trial was recently rejected by the Federal Circuit. In *Agfa Corp. v. Creo Prods., Inc.*, 451 F.3d 1366 (Fed. Cir. 2006), the Federal Circuit held that a district court's decision to hold a bench trial on the defendant's inequitable conduct defense before conducting a jury trial on the plaintiff's infringement claims did not preclude the trial court from later conducting a jury trial on the plaintiff's claims and, thus, did not deprive the plaintiff of its Seventh Amendment right to a jury trial. *Id.* at 1372-73. In so ruling,

7

the court distinguished *Beacon Theatres* by noting that in that case "the declaratory judgment plaintiff sought to raise essentially the same antitrust issues for which the declaratory judgment defendant sought a jury trial." *Id.* at 1372. The case before it, however, "involved issues of inequitable conduct (including the materiality of the undisclosed prior art) and validity." *Id.* Although the issues "overlapped to some degree," *id.*, the court concluded "they are not common issues such as in *Beacon Theatres*." *Id.* Thus, *Beacon Theatres* did not preclude the district court from conducting a separate bench trial before convening a jury to determine Agfa's infringement claim.

The *Agfa* court noted that it had reached essentially the same conclusion in *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209 (Fed. Cir. 1987). In *Gardco*, the plaintiff sought a declaratory judgment on the asserted invalidity, unenforceability, and non-infringement of a patent. The patent was alleged to be unenforceable and invalid based on prior art that consisted of the patentee's own prior products, which were not disclosed to the PTO during the examination. Notwithstanding the defendant's counterclaim for infringement and demand for a jury trial, the district court separated the inequitable conduct issue for trial to the court and postponed, if necessary, a jury trial on infringement and invalidity. The district court found it unnecessary to impanel a jury after the bench trial on inequitable conduct resulted in a finding that the patent was unenforceable. On appeal, the Federal Circuit rejected the defendant's claim that it had been denied its right to a jury determination, explaining that inequitable conduct and patent validity issues are separate and distinct:

> The simple fact is that a patent may be valid and yet be rendered unenforceable for misuse or inequitable conduct. Similarly, a valid patent may be (in the abstract) infringed, that is, the accused device may fall within the scope of the claim, but there will be no liability to the patentee when the patent is unenforceable. Thus the conduct-of-the-applicant-in-the-PTO issue raised in the nonjury trial and the

8

> separated infringement/validity issues are distinct and without commonality either as claims or in relation to the underlying fact issues.

820 F.2d at 1213.

The same is true here. ASP's patent could be found valid and yet, if defendants' allegations are proven true, it would be unenforceable. A patentee who submits false or fabricated evidence to the PTO engages in inequitable conduct regardless of whether the patent is otherwise valid. Thus, when allegations of such a nature are made, it will often be reasonable to address them first before the difficult and arduous task of undertaking a trial on the merits of the infringement claim. *See, e.g., Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945).

In an effort to distinguish *Agfa* and *Gardco*, ASP argues that in those cases, the inequitable conduct claims were based on the patentees' failure to disclose their own prior product to the PTO. In both cases, ASP argues, there was no dispute over whether the products were prior art, and thus there were no common factual issues between the inequitable conduct defenses, and the liability claims and defenses. (ASP Br. at 8.) ASP's argument, which is not well developed, is unconvincing. First, it appears that in both *Agfa* and *Gardco*, the patentees did dispute the issue of whether the products they failed to disclose were prior art, i.e., whether they were material. *Agfa*, 451 F.3d at 1377; *Gardco*, 820 F.2d at 1214. More important, this case involves allegations that the patentee lied to the Examiner and submitted fabricated evidence. Issues of this nature and the evidence related to them are far less likely to overlap the infringement and validity issues on which ASP is entitled to a jury trial than the nondisclosure allegations that formed the sole basis for the inequitable conduct defenses in *Agfa* and *Gardco*. Whether ASP submitted fabricated evidence to the PTO is separate and distinct from the question of whether Parsons thought of the invention

9

before the Padden application was filed. While some of the evidence may overlap, the issues are not the same. I therefore conclude that *Beacon Theatres* does not preclude this court from granting defendants' motion and holding an immediate bench trial on the defense and counterclaim of inequitable conduct, and turn to the question of whether such an approach would be prudent in this case.

**2. Economy of Resources**

Rule 42(b) provides that the court "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, third-party claim, or of any separate issue or any number claims, cross-claims, counterclaims, third-party claims, or issues . . . ." Fed. R. Civ. P. 42(b). Defendants argue that holding a separate bench trial on the issue of inequitable conduct will result in significant savings of time and resources both for the parties and the court no matter how the issue is decided. They note that this was essentially the conclusion reached by the district court in *Agfa* when it ordered a separate bench trial on the defense of inequitable conduct:

> [T]here is a good prospect that there will be economies in the presentation of the case whichever way it is resolved. Obviously, if the defendants prevail and enforcement of the patents is denied on equitable grounds, the time and expense of presenting the rest of the case will be saved. Even if the defendants do not succeed, the presentation of the other issues in a subsequent jury trial can proceed with more focus and less interruption than would be the case if the court were simultaneously trying issues and hearing the evidence which the jury would not be permitted to hear.

(Def.s' Mot. For Immediate Bench Trial, Ex. A, Order Denying Mot. for Summ. J. at 2.) In *Agfa*, unlike this case, the patentee had sued essentially one competitor. 451 F.3d at 1370. Given the number of defendants ASP has sued, the reasoning of the court in that case is even more persuasive here.

10

If the defendants prevail, the '018 patent would be unenforceable and there would be no need to continue to litigate the other patent liability issues in the seven cases that are now consolidated before me. Moreover, since the patents at issue in the six recently filed cases that are pending before me are continuations or continuations-in-part of the '018 patent, a determination of inequitable conduct may resolve those cases as well. Thus, early resolution of this issue could potentially save the defendants the significant time and resources that are yet to be expended on preparing and filing dispositive motions and preparing for, and conducting, a jury trial. The savings to the plaintiff and the court are even greater. ASP would have to respond to, and the court would have to decide, as many as seven motions for summary judgment, just in this case. If the cases were not resolved by summary judgment or settlement, the court would also have to conduct as many as seven jury trials if, as anticipated, the consolidated cases were to be tried separately. When one adds the possibility of resolving the six additional cases ASP has recently filed, the potential savings of time and resources grow even more.

Of course, it is unknown at this point whether the defendants will succeed on their inequitable conduct defense, but even if they do not, trying the issue separately to the court will still result in significant savings of time and resources. The parties and the court would address the issue once, instead of in potentially seven separate trials. This would avoid the risk of inconsistent judgments. And while some of the evidence will certainly overlap, it is not clear at this point that all of the evidence relating to inequitable conduct would be admissible on the issues properly presented to a jury. Trying the defense of inequitable conduct separately to the court may thus avoid potential prejudice and jury confusion that could result from the presentation of evidence and argument relating solely to an issue to be decided by the court.

11

It is true that if defendants do not prevail on their defense, granting a separate trial on it at this point could delay the ultimate resolution of the case. But defendants seek to minimize any undue delay by requesting a bench trial within sixty days. They note the parties are prepared to proceed on the issue now and contend the issue could be fully tried to the court in five days. In light of the fact that ASP recently requested a similar delay to pursue settlement discussions, I do not find this potential delay to be unduly prejudicial to ASP. For all of these reasons, I find that a separate trial on the defense and counterclaim of inequitable conduct would further convenience and avoid prejudice. It would also be conducive to expedition and economy.

**3. Sufficiency of Showing**

Finally, ASP argues that a separate trial on inequitable conduct would be a waste of time for both the court and the parties because the defendants lack clear and convincing evidence of inequitable conduct. Citing the Federal Circuit's observation that "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague," (Pl.'s Br. at 14, *quoting Burlington Indus., Inc. v. Dayco Corp.,* 849 F.2d 1418, 1422 (Fed. Cir. 1988)), ASP argues that defendants do not have anything close to clear and convincing evidence. For this reason, ASP contends, their request for a separate trial on the issue should be denied.

ASP is correct that, given the prevalence of asserting questionable inequitable conduct allegations as a defense in patent cases, a separate trial on the issue should not be granted in every case in which it is raised. But the defendants have done more than merely raise the issue. They have offered evidence from two forensic document examiners that raise substantial questions concerning the date of a document that was submitted by Dr. Parsons in support of his claim that his conceptualization of his invention preceded the application for a patent that the Examiner found

12

precluded several of his claims. That evidence consists of the indentations in the document submitted by Dr. Parsons of two separate drawings that were created long after he claims to have created the one submitted to the Examiner to establish the priority of his invention. Moreover, ASP's own forensic document examiner does not dispute the findings of the other experts that the indentations are present and that it appears from an examination of them that the pages on which they were drawn were perfectly aligned with the one containing Dr. Parsons' sketch of his invention. Instead, she offers an alternative explanation as to how they could have gotten there with the pages perfectly aligned. Defendants have offered evidence that her alternative explanation is inconsistent with Dr. Parsons' own testimony as to what he did with the drawing after he completed it. Defendants also offer testimony from two former employees of ASP, one of whom was a co-inventor of the flashlight, in support of their contention that Dr. Parsons' claimed conceptualization date is false. Thus, defendants have offered more than a mere allegation.

Of course, now is not the time to determine whether defendants can meet the high burden of proving inequitable conduct. As noted, ASP does offer an alternative explanation for the forensic evidence offered by the defendants, and vigorously challenges the testimony of its two former employees, both of whom, it points out, left on less-than-favorable terms. It also offers other documentation, including CAD drawings that it claims provide ample support for Dr. Parsons' claimed conceptualization date. In light of the foregoing, it would be impossible, as well as improper, for the court to say at this point whether defendants will be able to prevail on their inequitable conduct defense. From what has been presented, however, it is clear that the issue is not one that could be resolved on summary judgment. A trial will be needed to resolve the serious factual issues that are implicit in the defense and counterclaim defendants have asserted. And for

13

the reasons already set forth above, I conclude that a separate trial to the court is the most economical, fair, and just way to resolve those issues.

**IT IS THEREFORE ORDERED** that defendants' motion for a separate bench trial on the affirmative defense and counterclaim of inequitable conduct is granted. The clerk shall set this matter for a conference with the court within the next ten days to set a date for such a trial and address the manner in which it will proceed.

Dated this   10th   day of January, 2007.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge