UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ARMAMENT SYSTEMS AND PROCEDURES, INC.,

    Plaintiff,

v.                                           Case No. 00-C-1257

IQ HONG KONG LTD, et al.,

    Defendants.

**ORDER**

    Three discovery motions are currently pending. In the first, the defendants seek to exclude the plaintiff's expert witness, Emily Will, on the basis that she was identified by Armament over five months after expert disclosures were due. In the second-filed motion, defendants move to compel Armament to produce its electronic data at the site of defendants' retained computer forensic firm rather than at the site of Armament's expert. In the third motion, Armament seeks to compel the deposition of the defendants' forensic document expert, Erich Speckin, as well as his work papers and other documents.

**1. Motion to Exclude Emily Will**

    The motion to exclude is based on Armament's failure to identify its expert more than five months after expert disclosures were due. In addition to violating the court's scheduling order, the identification of Ms. Will comes several months after the parties had exchanged expert reports and supplemental reports on the documents at issue. The defendants believe the timing is designed to allow Will to tailor her opinions to counter the proposed testimony of Erich Speckin, the

defendants' document expert, and allowing her to do so would sanction Armament's protean explanation of the authenticity of the document in question.

Armament raises several arguments in support of its recently-named expert, but the thrust of the argument is founded in the fact that the nature of the case has changed dramatically since this court's January 10, 2007 order scheduling a bench trial on inequitable conduct. Since that order, the case has been transformed – at least temporarily – into a situation in which the plaintiff must play defense and defend its patent and its actions before the PTO. Its primary counsel of several years has fallen off. Thus, given these changes, Armament should not be expected to adhere to the original scheduling order or be penalized if its tardiness produces no prejudice to the other side.

Although the defendants' position has considerable merit, I conclude that leniency is called for in this instance. Ultimately, the defense of inequitable conduct – especially when it involves claims of forgery or outright fraud – is as grave a matter as can be expected to arise in a civil case; it certainly involves a substantial financial outlay and the reputation of the patentee; it also implicates the investment of time of countless attorneys over the course of this case. In addition, the charge of inequitable conduct must be proven by clear and convincing evidence. *Cargill, Inc. v. Canbra Foods, Ltd.,* 476 F.3d 1359, 1363 (Fed. Cir. 2007). If the defendants do carry the day, justice will ultimately be better served if the plaintiff is allowed to present to the court its best efforts at explaining the authenticity of any documents in question. In other words, the result would be particularly unsatisfying – and the "clear and convincing" standard less likely to be reached – if there is any indication that the plaintiff might have successfully defended its patent but for a disallowed expert. Finally, the fact that the matter is before the court in a bench trial, rather than a jury trial, means that the evidence presented – and its limitations – can be fleshed out in a fashion

2

more nuanced than that allowed in a jury trial. That is, if there are flaws in any testimony or prejudice resulting from late identification of the expert, it makes more sense to explain to the court the nature of the limitations or prejudice in the context of the trial, rather than simply to forbid the testimony from the outset. Accordingly, I will not exclude the testimony of Ms. Will; she may file an expert report on March 26 and testify at trial.

Rule 37(c)(1), as both parties seem to recognize, allows a the award of other sanctions in lieu of barring testimony. Because the defendants' motion was justified by the plaintiff's untimeliness, plaintiff is ordered to pay $750 to the defendants to approximate the defendants' reasonable attorney's fees incurred in bringing the motion. Fed. R. Civ. P. 37(c)(1).

**2. Motion to Compel Deposition and Documents of Erich Speckin**

Although defendants had originally offered Erich Speckin, their document expert, to be deposed, they retracted the offer apparently on the basis that Armament wanted to have Ms. Will present as an advisor during the depositions. Defendants have offered to produce Speckin so long as Will does is not a testifying witness, but obviously agreement has not been reached on that issue.

Again, the defendants' position is certainly reasonable. Armament's position rests too heavily on the rhetorical question, "what are they so afraid of?" But that "playground rhetoric" is not an independent basis for allowing any expert to testify on any time frame; instead, as discussed above, the unique circumstances of this case led me to conclude that Armament should be allowed to offer its expert. Given that conclusion, the defendants' central objection to producing its own expert for deposition cannot stand; and its other objections are based on largely unrelated other delays Armament has caused. Once again, if there are concrete examples of prejudice or flaws in Will's testimony, those may be elucidated at a later date; for the time being, Will is allowed to

3

testify as an expert and the defendants must produce their own expert for deposition, along with the documents Armament has requested, within fourteen days.

**3. Motion to Compel Production of Documents**

This motion involves not the physical document experts but the experts who are to opine on the electronic genesis of the document. Both sides have hired computer experts: Armament's is located in the Milwaukee area, while the defendants' is in Minneapolis. At issue is not whether the electronic files will be produced, but *where* they should be produced. The defendants want Armament to send the files to its expert's firm in Minneapolis, but Armament protests that this would allow "unsupervised analysis" of its corporate database. Armament also argues that there is no reason the defendants' experts would need their own "laboratory," since the tests can be done with laptop computers regardless of where they are located.

Despite Armament's protests, however, there seems little reason to treat this discovery differently than more typical forms of information that is routinely produced through discovery; if paper documents are produced, they are normally copied and sent to the other side. Similarly, at issue here are forensic copies of hard drives, not Armament's actual computers or originals. There thus seems no reason to allow Armament to exercise the level of control it desires over relevant discovery material, especially when it may simply produce the copies that were requested. Its concerns about privacy seem adequately addressed by the protocol defendants propose, through which documents produced will be screened first by Armament's counsel, a process that seems less burdensome than forcing the defendants' experts to conduct their testing at the site of Armament's experts. Armament's conclusory claims notwithstanding, it also appears the process is more involved than simply running a few programs off a laptop. (Docket No. 325, Ex. D.) Accordingly, the motion to compel will be granted.

4

The motion to exclude [322] is **DENIED**, but plaintiff is ordered to pay $750 to the defendants to approximate the defendants' reasonable attorney's fees incurred in bringing the motion. The motion to compel the deposition of Speckin [327] is **GRANTED**. The motion to compel production [325] is **GRANTED**.

**SO ORDERED** this   22nd   day of March, 2007.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge
