IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| Armament Systems & Procedures, Inc.<br>Plaintiff<br>v.<br>IQ Hong Kong Limited, *et al.*<br>Defendants | Civil Action No. 00-C-1257<br>Judge William C. Griesbach |

**Plaintiff ASP's Motion *In Limine* To Preclude Defendants' Patent
Law Expert, Harry Manbeck, From Testifying At Trial**

Pursuant to Fed. R. Evid. 104(a), 402, 403, and 702, Plaintiff Armament Systems & Procedures ("ASP") moves *in limine* for an order precluding patent attorney Harry Manbeck from testifying in the upcoming trial on Defendants' claim of inequitable conduct. Defendants have retained Mr. Manbeck as a proposed expert to testify about legal issues (e.g., the law of inequitable conduct and relevant statutes and regulations governing same) as well as to offer his opinions on whether Dr. Parsons committed inequitable conduct, intended to mislead the PTO, and which testimony in the record to credit. However, the proper determination of the governing law in this case and any inferences to be drawn from Dr. Parson's actions are the exclusive purview of this Court, and such subjects are not the proper subject of expert testimony by a patent attorney at trial. Mr. Manbeck would merely be opining on the governing patent laws and how he would interpret and characterize the record if he were the finder of fact based on his review of the cold record in this matter. Such testimony from a patent attorney impermissibly attempts to usurp this Court's role as the sole source of law and finder of fact in this case. Moreover, Mr. Manbeck lacks expertise on the issue of deciding whether Mr. Parsons misrepresented facts to the Patent Office. Precluding Mr. Manbeck's testimony would obviate

the need for ASP to call its own patent law expert on these same issues and would substantially shorten the time necessary to complete this trial.

I.  **Background**

Defendants claim that Dr. Kevin Parsons committed inequitable conduct by allegedly fabricating a conception drawing of a flashlight and submitting this documentation to the PTO in an attempt to swear behind a prior art reference.  This Court scheduled a bench trial on the issue of inequitable conduct to commence on April 30, 2007 (Docket Nos. 290 & 300).  The facts that are relevant to the trial on inequitable conduct relate predominately to the issue of when Dr. Parsons created a specific drawing that was later submitted to the PTO, and the truthfulness of Dr. Parson's statements to the PTO.  Mr. Manbeck has no personal knowledge of the underlying events that gave rise to the issue before the Court, but instead offers the Court a recitation of his understanding gleaned from reading the prosecution file history, deposition transcripts, and expert reports in the case.  Mr. Manbeck's testimony is expected to track his 102 paragraph expert report,[1] where Mr. Manbeck sets forth his understanding of the patent laws and facts in the case under the following headings:

- (1) "**General Considerations Attaching to United States Patents**," such as the purpose Mr. Manbeck ascribes to the patent laws (although none of these statements are directed specifically to the facts of this case)  (¶¶8-15)
- (2) "**The Patenting Process**," comprising background information about how Mr. Manbeck perceives the typical workings of patent prosecution in the PTO (although again not as applied to this particular case at bar)(¶¶16-23)
- (3) "**The Duty of Candor and Good Faith**," where Mr. Manbeck opines as to his understanding of the governing laws and regulations pertaining to candor directed to the PTO (again with no reference to the facts of this case)  (¶¶24-30)

---

[1] Mr. Manbeck's expert report was submitted to this Court under seal as Exhibit D to Docket No. 273 (Defendants' Brief In Support Of Motion For Immediate Bench Trial On Inequitable Conduct).

(4) "**Prosecution History of the '018 Patent**," where Mr. Manbeck offers an opinion as to how the patent-suit was prosecuted before the PTO, based not on personal knowledge, but instead on his review of the prosecution file history from the patent-in-suit (¶¶31-38)

(5) "**The Reexamination of the '018 Patent**," where Mr. Manbeck again sets forth his understanding of "facts" from the patent prosecution record and characterizes the activities therein (¶¶48-70)

(6) "**The Defendants' Evidence Pertaining to the Parsons Rule 1.131 Declaration**," in which Mr. Manbeck summarizes what he apparently believes to be the salient portions of the expert report of another of Defendants' expert witnesses (Mr. Robillard), and also summarizes and interprets testimony from depositions of other fact witnesses (Messrs. Speckin, Keller and Hawkinson), which summaries include Mr. Manbeck's own impressions of which testimony he finds credible. (¶¶71-88)

(7) "**Conclusions Concerning the Parsons Drawing of June 14, 1997**," where Mr. Manbeck sets forth the conclusions he would draw from the evidence as he understands it if he were the finder of fact in the case (¶¶89-93)

(8) "**Dr. Parsons' Purported Invention Disclosure**," a section devoted to Mr. Manbeck's impressions and interpretation of deposition testimony from various witnesses (including Dr. Parsons and Mr. Keller), where Mr. Manbeck compares the testimony of witnesses and credits the testimony of Mr. Keller over Dr. Parsons (¶¶94-101)

Mr. Manbeck should not be permitted to express the opinions presented in his expert report because such testimony would impermissibly usurp the role of the Court in this case by: (1) offering improper opinions as to the governing law; (2) testifying about facts of which Mr. Manbeck has neither personal knowledge (e.g., Mr. Manbeck's knowledge nor expertise (e.g., Mr. Manbeck's knowledge of any operative facts in this case was gained solely through reading deposition transcripts, expert reports, documentary evidence, and speaking with Defendants' counsel, without any regard to Rules of Evidence or considerations of admissibility); and (3) drawing inferences from his understanding of the evidence and telling the Court how he would decide the issue if it were up to him. Each of these problems is independent of the additional concern that Mr. Manbeck is an attorney who is employed by Defendants to support their position of the case.

**II.     Expert Testimony Regarding Controlling Law And Findings of Fact Is Inadmissible**

   **A.     Mr. Manbeck's Testimony About Patent Law Is Not Helpful**

Courts routinely exclude the testimony of experts about issues of patent law on the basis that such opinions are not helpful pursuant to Fed. R. Evid. 702. As explained by one Court in ruling that former US Commissioner of Patents Donald W. Banner could not testify in a case:

> There is no need for a patent lawyer to explain patent law to the court.… Federal judges are expected to be experts on federal law. Accordingly, the testimony of a legal expert in federal cases is generally unnecessary.

*W.R. Grace & Co. v. Viskase Corp.,* 1991 U.S. Dist. LEXIS 14651, *2 (N.D. Ill. Oct. 11, 1991). Other courts have similarly precluded expert testimony about the topics similar to those included in Mr. Manbeck's expert report here, including "substantive issues of patent law, including inequitable conduct … duties and responsibilities of an inventor, his or her attorney or agent, and others substantively involved in the preparation and prosecution of a patent application." *Revlon Consumer Prods. Corp. v. L'Oreal S.A.,* 1997 WL 158281, *2-3 (D. Del. 1997). *See also Syngenta Seeds, Inc. v. Monsanto Co.*, 2004 U.S. Dist. LEXIS 18712 at * 2-3 (D. Del. 2004) (excluding expert testimony concerning "a general overview of patent law and the PTO," "specific PTO procedures," and "the prosecution history"); *GTY Indus. v. The Genlyte Group*, 1995 U.S. Dist. LEXIS 21085 at * 33-35, 38 USPQ 2d 1801, 1810 (C.D. Cal. 1995) (excluding expert testimony about "the standard of review, the standard of patentability, the applicability of the presumption of validity, and the issues of claim scope and construction.").

In this case, Mr. Manbeck is expected to offer the Court his view of the governing patent case law. ASP will have no choice but to present the rebuttal testimony of its own expert (Ronald H. Smith) in response. This Court is the sole arbiter of the law that applies to the inequitable conduct claim and can determine such issues without the input of purported "experts

4

of law" that have been hired by the parties.[2]  Evidence consisting of two patent attorneys arguing about patent law and how they interpret the facts in this case promises to be nothing but a waste of the Court's time and the parties' resources.  Moreover, such expert testimony invades the Court's province as the sole source of law. *See Bammerlin v. Navistar Int'l Trans. Corp.,* 30 F.3d 898, 900 (7th Cir. 1994)("The meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court."); *Van Houten-Maynard v. ANR Pipeline Co.,* 1995 U.S. Dist. LEXIS 6751 at *9 (N.D.Ill. 1995)("It is well settled that decisions regarding questions, interpretation, and explanation of applicable law are the province of the court.  The court instructs the jury regarding the applicable law; the witnesses, even experts, do not.")  As such, the Court should not permit expert testimony dealing with explanation and interpretation of the governing law.

### B. Mr. Manbeck's Opinions On Whether Inequitable Conduct Exists on the Facts of This Case Should Be Excluded

In addition to his opinions on the governing law, Mr. Manbeck also is expected to testify that he believes inequitable conduct exists on the facts as he understands them in this case.  Mr. Manbeck lacks any first-hand knowledge of the facts in this case, but rather gains his understanding of the underlying facts though reading the dry record of the patent prosecution file, deposition testimony, and discussions with Defendants' counsel.  (Exhibit 6 to Mr.

---

[2] With experts of law, there is always the danger identified by the Federal Circuit where an expert is just wrong as to the governing law:

> We take note of the extent to which ... incorrect law was announced by a patent law expert witness. We encourage exercise of the trial court's gatekeeper authority when parties proffer, through purported experts ... markedly incorrect law. Incorrect statements of law are no more admissible through "experts" than are falsifiable scientific theories. *Hebert v. Lisle Corp.*, 99 F.3d 1109,  (Fed. Cir. 1996).

Manbeck's Expert Report). Mr. Manbeck should not be permitted to proffer his view of whether inequitable conduct exists on the facts of this case because such an opinion circumvents the fact-finder's decision making function. *See U.S. v. Cross,* 113 F.Supp.2d 1282, 1285 (S.D. Ind. 2000) (Expert "testimony which articulates and applies the relevant law . . . circumvents the jury's decision-making function by telling it how to decide the case.") Other Courts have similarly precluded expert witnesses from testifying about inequitable conduct. *See, e.g., Revlon Consumer Prods. Corp. v. L'Oreal S.A.,* 1997 WL 158281, *2-3 (D. Del. 1997)("The Court therefore cannot permit [the expert] to testify as an expert on inequitable conduct; to do otherwise would usurp the respective functions of the jury and the Court.") Mr. Manbeck's opinion on inequitable conduct is nothing more than the analysis, conclusions, and factual inferences made by a paid advocate of a party that has been presented in the guise of testimony from an expert. Such testimony invades this Court's province as the sole finder of fact and should not be permitted here.

### III. Mr. Manbeck's Expert Testimony In Which He Credits Some Testimony And Discounts Other Testimony Is Also Improper

Mr. Manbeck should not be permitted to suggest to the Court how testimony should be weighed and credibility assigned in this case. However, this is exactly what Mr. Manbeck does in his expert report. For example, after discussing alleged inconsistencies in the testimony of Mr. Keller and Dr. Parsons, Mr. Manbeck credits Defendants' witnesses over Dr. Parsons and concludes that "it was an improper act for Dr. Parsons" to submit a declaration based on Mr. Manbeck's interpretation of the facts. (Ex. Rep. ¶ 89). Mr. Manbeck further credits the Defendants' forensic document analysis (apparently to the exclusion of Plaintiff's document expert), but Mr. Manbeck has no credentials that permit him to decide which forensic expert has

the better end of an argument.[3]  Nothing in Mr. Manbeck's background, experience, or training as a patent lawyer and former patent commissioner enable him to form any opinion about the truth of any witnesses' statements, any alleged intent to deceive, or what testimony from a case is credible.  Simply put, Mr. Manbeck has no specialized skill in divining a person's intent or analyzing facts to draw inferences as to truthfulness, and he should not be able to suggest to the Court how to weigh the facts in this case.  Allowing Mr. Manbeck to testify as to these issues would be contrary to the express guidance of the Seventh Circuit.  *See Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000)("An expert cannot testify as to credibility issues.  Rather credibility questions are within the province of the trier of fact.")   Because such testimony is not based on any "scientific, technical or other specialized knowledge," it is properly precluded pursuant to FRE 702.

## IV. CONCLUSION

Mr. Manbeck is likely an astute practitioner of law, but this does not qualify him to testify as to state of the law or as to his understanding of the facts in this case.  At best, such testimony asks the Court to substitute Mr. Manbeck's judgment for its own reasoned analysis of the facts and law.  For the reasons stated herein, ASP respectfully asks that Mr. Manbeck be precluded from testifying at the upcoming trial on inequitable conduct.

---

[3] Mr. Manbeck is a patent attorney with a bachelor's degree in Electrical Engineering obtained from Lehigh University in 1949. (Exhibit 1 to the Expert Report of Mr. Manbeck at p. 1)  Mr. Manbeck's biography discusses solely his practice of law for the past 50 years, and makes no mention of any engineering work experience.  Thus, any expertise possessed by Mr. Manbeck would relate to law.

Dated: April 2, 2007                    s/ Michael J. Hanrahan
                                        Bruce O'Neill, Esq.
                                        Michael Hanrahan, Esq.
                                        Fox, O'Neill & Shannon, S.C.
                                        622 North Water Street, Suite 500
                                        Milwaukee, WI  53202
                                        (414) 273-3939

                                        A. Sidney Katz
                                        Richard W. McLaren, Jr.
                                        Steven E. Feldman
                                        WELSH & KATZ, LTD.
                                        120 South Riverside Plaza – 22nd Floor
                                        Chicago, IL  60606
                                        Telephone:    (312) 655-1500
                                        Facsimile:     (312) 655-1501

                                        *Attorneys for Plaintiff Armament Systems and Procedures, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2007, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will send notification of such filing to all of the attorneys of record on the ECF system for Case No. 00-CV-1257.

I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participants:

>Maurie E. Gauthier
>Samuels, Gauthier & Stevens
>225 Franklin Street, Suite 3300
>Boston, MA 02110
>
>Peter E. Heuser
>Kolisch Hartwell Dickinson McCormack & Heuser
>200 Pacific Bldg.
>520 SW Yamhill Street
>Portland, OR 97204
>
>Campbell Killefer
>Venable LLP
>Terrell Place
>575 7th Street, NW
>Washington, DC 20004-1601

s/ Michael J. Hanrahn
Michael J. Hanrahan
State Bar No. 1019483
Attorney for Armament Systems
 and Procedures, Inc.
Fox, O'Neill & Shannon, S.C.
622 North Water Street, Suite 500
Milwaukee, WI 53202
(414) 273-3939 – Phone
(414) 273-3947 – Fax
mjhanrahan@foslaw.com