# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

ARMAMENT SYSTEMS AND PROCEDURES, INC.,

        Plaintiff,

    v.                                        Case No. 00-C-1257

IQ HONG KONG LIMITED, et al.,

        Defendants.

---

**ORDER**

---

      Addressed herein are the plaintiff's motion to compel the return of documents (Docket 343) and defendants' motion to exclude documents (Docket 344).

**1. Motion to Exclude**

      The defendants' motion to exclude seeks to preclude the plaintiff from using at trial some 32 concept sketches that were produced only recently. The sketches have been used by the plaintiff's expert in an effort to demonstrate the possible legitimacy of the document ultimately at issue in this case, a conception sketch of the patent in suit dated June 14, 1997, which the parties call "Q-1". The motion will be denied.

      I have noted before that, as the factfinder in the inequitable conduct portion of this case, my ultimate objective is to determine whether the Q-1 document at issue is authentic. Given the seriousness of the allegations, as well as the high burden placed on the defendants to demonstrate inequitable conduct, my goal of determining authenticity is best served if I am allowed to consider as much relevant evidence as exists. That said, I would not hesitate to exclude evidence as a

sanction for serious discovery abuses, but I do not find that any abuse justifying exclusion has occurred here.

Armament produced the 32 additional sketches on March 20, 2007, some six weeks before trial, which the defendants cite as evidence of Armament's bad faith and deliberate attempt to thwart the legitimate discovery process. I find that the defendants' claim of bad faith is both implausible and unsupported by the record. First, the defendants have not explained why a cover-up of purportedly exculpatory documents would serve Armament's interests. Although it is conceivable that, in some cases, an eleventh-hour production of evidence could work to strategic effect, it is unclear why late production of the sketches now at issue would terribly prejudice the defendants' case. If Armament is to be believed, the sketches show that Parsons sometimes sketched on top of older sketches, which means he has an explanation for why the Q-1 document has impressions of sketches more recent than Q-1's date. These recently produced sketches (which do not depict the device at issue here) do not call into question the analyses or physical tests performed by the defendants' experts. Instead, they merely contest the *premise* on which the experts' conclusions rest, namely, that Parson's sketches would follow a typical sequence such as would result from using a fixed notepad. At trial, the defendants' experts will be able to explain whether their analyses hold up or how they square with the additional sketches; as such, the sketches do not require the defendants' experts to re-do their work but merely reassess the premise on which their work stands. (In fact, the defendants downplay the sketches and suggest they are easily explained away.) Thus, the defendants have not demonstrated either why they will be prejudiced or why it would have been sensible for Armament deliberately to withhold the documents from them (as well as one of their own experts) for so long.

2

In addition to finding the claim somewhat implausible, I find that the defendants' claims of bad faith are unsupported by the evidence. First, as Armament notes, most of the sketches at issue here were not clearly responsive to the defendants' discovery requests. This is not surprising, perhaps, given that the sketches do not depict the patent in suit. As such, their relevance only arose recently, once Armament determined they might undercut the defendants' experts' premise. Even if five or six of the 32 sketches were responsive to discovery requests, as the defendants claim, this is hardly evidence of a scheme to deliberately withhold evidence until the eve of trial. Once again, the defendants do not explain how the production of a few of these sketches would have been useful at an earlier date or why Armament would have benefitted from covering them up.

The bulk of the defendants' claim of abuse rests on their claim that Parsons was deliberately misleading during his deposition testimony, and that his obfuscatory testimony lulled them into failing to explicitly request the sketches in the first place. Review of Parsons' deposition testimony, however, reveals no attempt to mislead the defendants or hide the sketches. (Docket No. 351, Ex. J.) Though Parsons was unclear as to whether and how many sketches might have, at one time or another, ended up in the "blue book" at issue, he also acknowledged that the contents of his books were in constant fluctuation. The testimony is admittedly confusing, but that seems more a product of the fact that Parsons used numerous blue books at different times. Taken in full context, one could not conclude from Parson's deposition testimony that he intentionally covered up the existence of any sketches.

Ultimately, the defendants' claims are largely contradictory. In one breath they suggest that Armament and Parsons were engaged in a calculated scheme to withhold the 32 sketches from them. In the next breath, however, they ridicule the sketches as having no evidentiary import whatsoever,

3

easily explained away by their experts.  If this latter point is true, however, that undercuts the plausibility of a scheme to withhold the evidence, because there would be no point to hiding irrelevant evidence until soon before trial.  It also undercuts the notion that the defendants are prejudiced by the late disclosure.  By their own admission, they seem unmoved by the new evidence and their experts seem fully able to assimilate it.  In sum, what's clear is that the impact of the sketches is an issue best left for trial.  Even if a few of the sketches were properly the subject of earlier discovery requests, there is no indication that there were any discovery abuses that would justify precluding their admission.  Nor is there any suggestion that the defendants will be unable to deal with the evidence at trial.  If compelling evidence of prejudice emerges at trial, the matter may be revisited at that time.  For now, however, the motion to exclude is **DENIED**, without fees or costs to either party.

**2. Motion to Compel**

Plaintiff has moved under Local Rule 7.4 for an order compelling the defendants to return documents that were inadvertently produced in discovery.  The documents produced apparently consist of a file on an expert compiled by one of plaintiff's previous attorneys; the file includes emails and attorney-client communications.  Upon recognizing the inadvertent disclosures, several of the defendants returned or destroyed most of the information.  They retained portions of the discovery, however, claiming it was evidence of discovery abuse.

The new Rule 26(b)(5)(B) provides:

If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until

4

the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The producing party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B).

Defendants protest that the documents are discoverable because they provide evidence of Armament's fraudulent behavior. In particular, they assert that one document (an email) shows Armament deliberately withheld the 32 conception sketches (described above) from them until March 2007, only a few weeks before trial.

Defendants rely on the fraud / crime exception to the attorney client privilege; in other words, they suggest that because the email reveals an attempt to defraud them, it is not privileged. Although the defendants express exasperation with the late disclosure of the sketches that were described in the inadvertently produced email, there is little indication, as noted above, that the sketches were fraudulently withheld. If further evidence emerges later, the matter may be reconsidered. Plaintiff's motion (Docket No. 343) is **GRANTED**, and defendants are ordered to return to the plaintiff any privileged documents that are the subject of the instant motion. The motion for leave to file a reply brief (Docket No. 362) is **GRANTED**. The defendants' motion to exclude (Docket No. 344) is **DENIED**.

     **SO ORDERED** this 24th day of April, 2007.

                                         /s William C. Griesbach
                                         William C. Griesbach
                                       United States District Judge