UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ARMAMENT SYSTEMS AND
PROCEDURES, INC.,

        Plaintiff,

  v.                                      Case No. 00-C-1257

IQ HONG KONG LIMITED, et al.,

        Defendants.

## ORDER

Three motions *in limine* have been filed in an effort to exclude expert testimony. In addition, Armament filed a motion for leave to supplement its expert reports and add 14 recently discovered blank graph pages to its exhibit list. Defendants have also moved to compel production of certain attorney-client communications relating to the invention. Although responses and / or replies have not yet been received in every matter, the trial begins on Monday and a decision will aid the parties in planning their presentation of the case.

**I. MOTIONS TO EXCLUDE EXPERTS**

    **A. Harry Manbeck, Esq.**

Armament seeks to preclude Atty. Harry Manbeck, a former Commissioner of Patents and Trademarks, from testifying. Armament argues that he should be precluded from testifying because his testimony would overstep the proper role of an expert witness. In particular, Armament believes

it is the proper and exclusive role of the attorneys and the court to sort out the legal issues, and to allow a legal expert to testify would offend that basic divide. It is true that a lawyer may not testify about American legal issues as if they were "facts" within his personal knowledge. "Domestic law is properly considered and determined by the court whose function it is to instruct the jury on the law; domestic law is not to be presented through testimony and argued to the jury as a question of fact." *United States v. Oliveros,* 275 F.3d 1299, 1306-07 (11th Cir. 2001). And, as the Federal Circuit has reiterated, "this court has on numerous occasions noted the impropriety of patent lawyers testifying as expert witnesses and giving their opinion regarding the proper interpretation of a claim as a matter of law, the ultimate issue for the court to decide." *Endress + Hauser, Inc. v. Hawk Measurement Systems Pty. Ltd.,* 122 F.3d 1040, 1042 (Fed. Cir. 1997).

Thus, to the extent Manbeck would attempt to testify about ultimate legal issues, I would exclude or disregard that testimony. If he were to testify, for example, that "in my expert opinion, Mr. Parsons committed inequitable conduct," I would disregard such testimony. But as the defendants note (and it is their witness), it is not as though Manbeck is being offered as an expert witness to testify on the ultimate issue of inequitable conduct. Instead it seems likely that, as an undoubted expert not only in patent law but in the workings of the Patent and Trademark Office, Manbeck would be able to provide some *factual* context for *why* Parsons' behavior would have been inequitable, especially regarding the issue of materiality. The fact that Manbeck is not an eyewitness is irrelevant because the question is an objective one: "Materiality is not limited to prior art but embraces *any* information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent." *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.,* 326 F.3d 1226, 1234 (Fed. Cir. 2003) (quoting *GFI v.*

*Franklin Corp.,* 265 F.3d 1268, 1274 (emphasis in original)). If Manbeck can shed light on what a reasonable examiner would have considered important, I see no reason to exclude his testimony. Moreover, to the extent his testimony might stray into matters that are the exclusive purview of the court, I am confident that the testimony can be properly curtailed during the trial and that no prejudice will result. Accordingly, the motion to exclude Harry Manbeck as an expert witness is **DENIED**.

### B. Erich Speckin

Armament also seeks to preclude Erich Speckin, defendants' document expert, from testifying. It first notes that Speckin's testimony has been criticized and / or barred in other cases. It argues that Speckin's testimony is unscientific because it *assumes* several premises without having any scientific basis for doing so. It also notes that Speckin lacks general expertise in the area and has not tested his theories about how paper is produced and cut. Thus, his testimony must be excluded because it does not meet the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

Defendants protest that Speckin should be allowed to testify, but they resolve the problem by stating that they will not offer him as a witness at trial. Instead, all defendants will rely on the expert testimony of Alan Robillard, whom Armament has not sought to exclude. Accordingly, the motion to exclude is **DENIED** as moot.

### C. Paul Berman

Finally, plaintiff seeks to exclude the testimony of Paul Berman, an expert in product design and CAD (computer-aided design). Although his expert report is largely devoted to issues of

3

validity, the defendants wish to offer his testimony during the inequitable conduct trial.[1] At issue are certain CAD drawings dated January 15, 1998, which Armament puts forth as evidence that its conception of the Sapphire project commenced in June 1997. Based on his general experience with CAD, as well as his review of the drawings at issue, Berman's opinion is that these drawings were not all created on the same date, a fact which the defendants believe undercuts the drawings' reliability as a benchmark for the invention's timing.

*Daubert* requires a trial judge to screen proposed expert testimony for reliability and relevance. "While these concerns are of lesser import in a bench trial, where no screening of the factfinder can take place, the *Daubert* standards of relevance and reliability for scientific evidence must nevertheless be met." *Seaboard Lumber Co. v. United States,* 308 F.3d 1283, 1302 (Fed. Cir. 2002). I conclude that Berman should be allowed to testify. First, because this is a bench trial, the concerns of *Daubert* "are of lesser import" given that there is no jury to shield. *Seaboard Lumber,* 308 F.3d at 1302. It should go without saying that irrelevant or unreliable expert evidence will not enter into the mix of the court's decision-making process. As with Manbeck, or any other witness, in the event Berman's testimony crosses the line, I may entertain objections and disregard testimony at that time.

Moreover, I cannot conclude at present that Berman's testimony would be irrelevant or unscientific. Armament argues that Berman has no first-hand knowledge about how Parsons actually developed inventions, which is the only thing that is relevant in the upcoming trial. Of course that is the ultimate issue, but it is possible that Berman's testimony would be useful in evaluating the plausibility of the design process Parson claims he used. For instance, if Berman is

---

[1]His report is attached as an exhibit to Docket No. 339.

able to testify that the procedures Armament used were highly unusual in the industry, or that it would not have made sense to sketch an idea in June and then reduce the idea to CAD drawings the next January, that could call into question the timing sequence Armament proposes. Berman is certainly well-credentialed – he is a mechanical engineer and president of a product design and prototyping firm – and I conclude that his testimony might aid the court in evaluating the issues to be decided. Accordingly, the motion to exclude is **DENIED**.

### II. MOTION TO COMPEL

The motion to compel asserts that Armament waived its attorney-client privilege with respect to certain communications. The documents at issue are listed in Armament's privilege logs and involve Parsons' communications and meetings with McDonnell, Boehnen, Hulbert & Berghoff ("MBHB"), Armament's original patent counsel.

Defendants claim Armament intentionally waived its right to assert the attorney-client privilege because it produced a letter from its patent counsel, who wrote, "I believe Dr. Parsons discussed the Sapphire light with the MBHB team on December 4, 1997." (Docket No. 361, Ex. A.) That is, Armament is using some of its attorney-client communications as a defense to the inequitable conduct charge (as evidence of the conception date), and it should not be allowed to hide behind attorney-client privilege selectively. As the Federal Circuit has noted:

> The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter. The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not.

*Fort James Corp. v. Solo Cup Co.,* 412 F.3d 1340, 1349 (Fed. Cir. 2005) (citations omitted).

5

The question, then, is what is the "subject matter" as to which Armament has waived privilege? It seems the disclosure has been limited to the issue of timing – i.e., the central issue in the upcoming trial. That is, the evidence is offered by Armament only to show that the idea *existed* as of a certain date; the disclosure does not, in other words, involve attorney-client communications as to validity or any other sort of legal advice. Accordingly, Armament is ordered to produce the documents sought in the motion, but it may redact any portions of such documents that reveal any of its attorney's thoughts, impressions, and the like, about legal issues such as validity.

### III. MOTION FOR LEAVE TO SUPPLEMENT

Finally, Armament seeks to introduce additional evidence of Parsons' practice of drawing on top of other documents. It asserts that last weekend Parsons found additional blank sheets of paper and that Armament's expert has been able to conclude from them that they contain latent impressions from indented writing. The expert opines, in a supplemental report: "The indentations listed are significant because they offer support for the proposition that blank backer sheets used for concept drawings and other writing are stored by Dr. Parsons, and could be used to produce concept drawings at a much later date." (Docket No. 366, Ex. A at 2.) In other words, the additional documents show another example of Parsons using (loose) backer sheets, which could explain how a given document has impressions on it from a *newer* drawing.

Defendants have not yet responded to the motion, but it is assumed that the motion is opposed. Armament has attempted to mitigate any prejudice by flying the documents to Alan Robillard, the defendants' expert, who is already examining them. In the event some indication of prejudice emerges, the defendants may raise that objection during the trial. However, for present

6

purposes, the motion will be **GRANTED** and Armament will be allowed to rely on the additional sheets of graph paper.

## IV. CONCLUSION

For the reasons given above, the motions to exclude (Docket Nos. 338, 339, 340) are **DENIED**. The motion to compel (Docket No. 361) is **GRANTED**, in part. The motion for leave to supplement (Docket No. 366) is **GRANTED**.

**SO ORDERED** this __27th__ day of April, 2007.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
