UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ARMAMENT SYSTEMS AND PROCEDURES, INC.,

    Plaintiff,

v.                                                Case No. 00-C-1257

IQ HONG KONG LIMITED, et al.,

    Defendants.

**ORDER**

Presently pending are the plaintiff's motion for a new trial as well as defendants' motions for attorneys' fees.

**I. Motion for a new trial**

Plaintiff Armament Systems and Procedures, Inc. ("ASP"), seeks a new trial on the premise that this Court, in bifurcating the issue of inequitable conduct and conducting a bench trial on that issue, jumped the gun and denied plaintiff a right to a jury trial, in violation of the Seventh Amendment. ASP's argument was squarely addressed in a pretrial order in which this Court found that the equitable issue tried to the Court would not overlap any factual issues involved in ASP's claims:

> this case involves allegations that the patentee lied to the Examiner and submitted fabricated evidence. Issues of this nature and the evidence related to them are far less likely to overlap the infringement and validity issues on which ASP is entitled to a jury trial than the nondisclosure allegations that formed the sole basis for the inequitable conduct defenses in *Agfa* and *Gardco*. Whether ASP submitted fabricated evidence to the PTO is separate and distinct from the question of whether

> Parsons thought of the invention before the Padden application was filed. While some of the evidence may overlap, the issues are not the same.

(Order of January 10, 2007 at 9-10.)

Although *Agfa*, 451 F.3d 1366, was a 2006 case from the Federal Circuit, plaintiff believes a more recent case, *Shum v. Intel Corp.,* mandates the opposite result and a new trial. --- F.3d ----, 2007 WL 2404718 (Fed. Cir. Aug. 24, 2007). It does not.

*Shum* reversed a district court on the grounds that the district court had erroneously precluded the plaintiff from obtaining a jury trial on state law fraud claims that were based on improper inventorship. The district court held a bench trial on the plaintiff's correction of inventorship claim under 35 U.S.C. § 256. In assessing such a claim, "'the critical question for joint conception is who conceived, as that term is used in the patent law, the subject matter of the claims at issue.'" *Id.* at *4 (quoting *Ethicon v. U.S. Surgical Corp.,* 135 F.3d 1456, 1460 (Fed. Cir. 1998)). The plaintiff's state law fraud claims also involved "who conceived . . . the subject matter of the claims at issue," and so the Federal Circuit found the issues substantially overlapped:

> in order to prove his fraud claim, Shum would have been required to prove the falsity of that representation by establishing, at the very least, that Verdiell did not solely conceive the inventions. Indeed, a showing that Shum was a joint inventor, if not the sole inventor, of the claimed inventions proves such falsity. In this regard, the critical question regarding the fraud claim again centers on conception.

*Id.* In other words, because key factual issues overlapped, by proceeding on the equitable claim first the district court precluded Shum from obtaining a jury trial as to those facts that would underlie his state law fraud claims. The Federal Circuit further distinguished (and reiterated) the holding in *Agfa,* noting "that because the legal claims in *Gardco* and *Agfa* likewise involved infringement and validity, rather than fraud based on misrepresentations relating to inventorship, those cases do not control." *Id.*

2

In the present case, ASP's claims involved infringement and validity, and thus under *Agfa* I concluded that the claims did not overlap to an extent that the Seventh Amendment would be implicated. If anything, *Shum* reinforces my earlier holding and merely applies the same principles to the presumably rare scenario in which the plaintiff brought a state law claim of fraud that essentially mirrored the federal claim for correction of inventorship. The central issue in this case was whether the patent's inventor submitted a false document to the PTO which would render the patent unenforceable. As I concluded earlier, the facts involved in the inequitable conduct claim do not overlap with any other claims, and thus the Seventh Amendment has not been violated.

Perhaps recognizing that *Shum* does not actually change the governing law, ASP argues for the first time that it is defendant *Emissive*'s counterclaim for unfair competition that overlaps with the inequitable conduct claim. It should be noted, however, that only Emissive asserted a counterclaim for unfair competition that was arguably based on Parson's allegedly fraudulent conduct. Since the counterclaims were never consolidated, ASP's argument that Emissive's unfair competition claim entitled it to a jury trial on Emissive's inequitable conduct claim would have no bearing on the other defendants. More importantly, Emissive's counterclaim for unfair competition was not filed until March 9, 2007, some two months after I granted the defendants' motion for a separate bench trial, and ASP never requested reconsideration on that basis. Thus, it is unclear why ASP is in a position to raise this issue (which is not dependent on *Shum* or any new evidence) in what is essentially a motion for reconsideration. Given the substantial resources that both the parties and the Court expended at trial, it would be profoundly inefficient to entertain an argument after trial that could have been raised before. "[A] party may not seek a second trial on the basis

3

of a theory not urged at the first trial." 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2805, at 59 (West 1995). I thus conclude that ASP has forfeited this argument.

In any event, to end all doubt on the matter, Emissive has stated that it will not pursue its unfair competition claim and has filed a motion to dismiss it, a fact which moots ASP's protests based on any overlap between these claims and the inequitable conduct claim. ASP makes the unusual argument that Emissive's dropping of the claims at this stage is a "blatant maneuver to try to eliminate ASP's right to a trial by jury." (Reply Br. at 7.) In other words, ASP seeks to assert a right to a jury trial on claims that will not even be brought, and this inchoate right is supposed to relate back to the earlier bench trial. In its own words, ASP claims a Seventh Amendment violation cannot be retroactively cured because the violation occurred, in its view, at the time the bench trial was conducted on the equitable issue.

I disagree. Dropping the claim seems a perfectly reasonable outcome. If ASP is right that the inequitable conduct and unfair competition claims overlap, then the "penalty" for overlapping is that Emissive – having sought the bench trial in the first place – must forfeit such claims because to proceed on them would be depriving ASP of its right to have such claims heard by a jury. After all, it is the right to jury trial on *the claims to be dropped* that was allegedly violated – the fact that they may have still been viable claims at the time of the bench trial is simply a coincidence. Ultimately, ASP's argument is the tail wagging the dog: when this lawsuit is finally over, ASP will not have been deprived of a jury trial as to any facts it had a right to have a jury decide. If anything, it has *won* something by getting Emissive to drop claims that might have, if pursued, violated a jury trial right. Its efforts to rely on an unrealized Seventh Amendment violation for claims that are not even being brought against it are therefore rejected.

4

**II. Motion for attorneys' fees**

Title 35 U.S.C. § 285 allows an award of fees in "exceptional cases." A determination whether to award attorney fees under 35 U.S.C. § 285 involves a two-step process. First, the court must determine whether the prevailing party has proved by clear and convincing evidence that the case is "exceptional." Second, if the court finds the case to be exceptional, it must then determine whether an award of attorney fees is appropriate. *Forest Laboratories, Inc. v. Abbott Laboratories*, 339 F.3d 1324, 1327-1328 (Fed. Cir. 2003). The Federal Circuit has identified as "exceptional" those cases involving "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement. *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001).

With these considerations in mind and based upon the findings set forth in the Court's July 24, 2007 Memorandum Decision and Order, it clearly follows that this is an "exceptional" case. Many of the defendants here have spent the last several years embroiled in a costly lawsuit defending themselves against the charge of infringement of a patent I have concluded was maintained at least in part by fraud. The conduct at issue is not the run-of-the-mill inequitable conduct in which the inventor failed to disclose prior art or where materiality or intent were at issue. Here, the Court has found that the inventor deliberately manufactured a false document with the sole purpose of deceiving the patent office on a crucial factual matter. Not only did he continue to maintain its authenticity in this Court, but he submitted another fabricated document to bolster his claim of an earlier conceptualization date. Then, when the defendants questioned the authenticity of the documents, he mounted a vigorous defense, requiring them to expend additional time and resources to prove they were fraudulent.

5

Of course it is not only the burden on the defendants that must be considered, but also the threat that such conduct poses to the administration of patent law. Patent applicants owe a "duty of candor and good faith" to the PTO. 37 C.F.R. § 1.56(a) (2004); *see also Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed.Cir.1995). "A breach of that duty prevents the Patent Office from properly performing its function of preventing the issuance of unlawful patent monopolies." *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288, 294 (9th Cir. 1969) (citing *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806 (1945)). And where the owner of a patent obtained, or retained, by fraud sues on the patent in federal court, the harm to the system is compounded. In this case, the fraud was continued before this Court as ASP sought to refute defendants' claim that Dr. Parson's conception sketch was fabricated in order to avoid prior art.

Given the Court's previous findings in the matter, findings which ASP is certainly free to challenge on appeal, it is clear that this case is squarely within the heartland of "exceptional" cases – in fact, if this is not an exceptional case then it is hard to envision one that is. None of the cases cited by ASP in support of its argument that this case is not "exceptional" involve conduct as egregious as what the Court has found here. Indeed, ASP has cited no case in which the trial court found that the plaintiff engaged in fraud before the PTO and did not find it exceptional. ASP's further argument – that defendant IQ Hong Kong's alleged copying of its flashlight before the '018 patent issued and its failure to file an amended Rule 26(a)(1) disclosure identifying the insurer who was ordered to provide it a defense somehow justify denying fees in this case – is without merit. No finding has been made on the trademark and related claims ASP asserted against IQ Hong Kong, but even if the allegations turn out to be true, they do not involve a fraud on the PTO or the Court. Likewise, a party's inadvertent and non-prejudicial failure to supplement its discovery response after

6

it obtained a favorable ruling on its insurance policy does not compare with the findings entered against ASP.

For the same reasons, I also conclude that attorneys' fees should be granted to the defendants for their defense of this action after the re-examination process was completed. A fee award serves multiple purposes. Most obviously, it compensates defendants for money they were forced to expend to defend themselves against the charge of infringement of a patent that was maintained at least in part by fraud. But it also deters others who might be inclined to engage in such conduct before the PTO or our nation's courts. *Mathis v. Spears,* 857 F.2d 749, 754 (Fed Cir. 1988). Given the substantial economic benefit patents confer, it is essential that when a party is shown to have engaged in fraud in order to obtain or retain one, fees are awarded.

ASP argues that a denial of fees is nevertheless proper in this case because the fraudulent Rule 131 affidavit it submitted was not the proximate cause of the defendants' attorneys' fees. ASP notes that the Rule 131 affidavit was submitted in order to swear behind one reference (Padden), which the PTO found was only relevant to Claims 4, 5, 7 and 21-23 of the '018 patent. The Padden reference had no bearing on patent Claims 1-3, which had been reexamined and never rejected in light of Padden. Accordingly, ASP argues, Claims 1-3 of the '018 patent would have issued even absent the Rule 131 affidavit and the defendants would have still incurred the attorneys' fees. (Br. In Opp. To Mot. For Fees And Expenses at 11.)

The difficulty with ASP's argument, however, is that it would require the parties and the Court to expend further time and effort to determine what portion of fees were attributable to claims that were initially rejected based on Padden and what portion were attributable to Claims 1-3. Even assuming it could be done, requiring such an apportionment would only prolong the case and force the defendants to incur additional fees as a result of ASP's fraud. The argument also ignores the

7

fact that by virtue of ASP's fraud, the entire patent, including Claims 1-3, is invalid. Thus, defendants should not have been forced to incur any fees in defense of the case after the fraud occurred. Holding ASP responsible for the full amount of the fees expended in defense of the infringement claims after the fraud also serves the goal of deterring such conduct.

This is not to say that defendants are entitled to recover all fees incurred in defense of the action, however. ASP's initial claims of patent infringement were asserted on the basis of a facially valid patent before the reexamination process in which the fraud took place. Thus, ASP should not be required to pay attorneys' fees incurred by the defendants before April 7, 2004, when the Court lifted the stay that was entered when the PTO granted reexamination. ASP should also not be required to pay fees incurred for defense against its trademark and related claims. *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 674 (Fed. Cir. 1988) ("Because the attorney fee award in this case was in part for work connected with the now-defunct unfair competition claim, the amount of the award cannot stand.").

Finally, I conclude that this is one of those rare cases where the plaintiff should be ordered to pay a portion of the defendants' experts' fees. I recognize that a district court has no authority under § 285 to make such an award. *Amsted Industries Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 377 (Fed. Cir. 1994). But such authority does exist under the court's inherent authority. *Id.* at 377-78; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50-51 (1991). Such authority must be used sparingly and is only permitted when the court finds fraud or an abuse of the judicial process. *Amsted Indus.*, 23 F.3d at 978. Here, I have found that ASP, through Dr. Parsons, has submitted false and fraudulent documents both to the PTO and this Court. By maintaining the authenticity of these documents, ASP forced the defendants to incur substantial additional expert fees. I therefore conclude that defendants should recover the expert fees incurred by them in uncovering and proving

8

that fraud. Only those fees for experts retained to determine the validity of the sketch submitted to the PTO and the feature sheet (document 5560) submitted to the court are awarded, since those fees relate specifically to the fraud upon the court.

However, prejudgment interest will not be allowed. Attorneys' fees for the defendants continue to accrue, and the difficulty of determining interest from the date each service included in attorneys' fees is rendered persuades me that a more reasonable approach under the circumstances of this case is to require payment of interest only after judgment is entered. In reaching this conclusion, I have also considered the fact that I have already awarded the defendants attorneys' fees for the work related to claims of the '018 patent that were not affected by the fraud. Under these circumstances, I conclude that an additional award of prejudgment interest is not required in order to fairly compensate the defendants.

The defendants are directed to submit an accounting of their fees, along with those expert fees attributable to discovering and proving the fraudulent character of the documents submitted to this Court, namely, Q1 and Document 5560, by November 12; before doing so, they are directed to consult with the plaintiff in an effort to come to agreement on the amount in question. The defendants should make clear in their submission whether agreement has been reached.

In conclusion, the motion for a new trial and motion to vacate are **DENIED**; the motion for attorneys' and expert fees is **GRANTED** in part, as set forth herein. The defendants' recently filed motion for leave to file a sur-reply is **DENIED** as moot.

**SO ORDERED** this   12th   day of October, 2007.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge